FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 01, 2022

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| KARENA B., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY,[1] <br><br> Defendant. | No. 2:20-CV-00352-ACE <br><br> ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS <br><br> **ECF Nos. 20, 22** |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF No. 17, 20. Attorney Christopher H. Dellert represents Karena B. (Plaintiff); Special Assistant United States Attorney Joseph J. Langkamer represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 6. After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS** Plaintiff's Motion for Summary Judgment; **DENIES** Defendant's Motion for Summary Judgment; and **REMANDS** the matter to the Commissioner for additional proceedings pursuant to 42 U.S.C. § 405(g).

---

[1]Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew M. Saul as the defendant in this suit. No further action need be taken to continue this suit. *See* 42 U.S.C. § 405(g).

ORDER GRANTING PLAINTIFF'S MOTION . . . - 1

## JURISDICTION

Plaintiff filed applications for Supplemental Security Income and Disability Insurance Benefits in June 2017, Tr. 211, 213, alleging disability since April 12, 2017, due to shaken baby syndrome, concussion, traumatic brain injury, spinal meningitis, dislocated vertebrae, and chronic back pain. Tr. 245. The applications were denied initially and upon reconsideration. Administrative Law Judge (ALJ) Timothy Mangrum held a hearing on September 3, 2019, Tr. 32-72, and issued an unfavorable decision on November 5, 2019, Tr. 15-26. The Appeals Council denied Plaintiff's request for review on July 29, 2020. Tr. 1-6. The ALJ's November 2019 decision thus became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on September 29, 2020. ECF No. 1.

## STATEMENT OF FACTS

Plaintiff was 25 years old on the disability onset date, April 12, 2017. Tr. 211. She completed two years of college by 2014, Tr. 246, and was working part-time at the time of the September 3, 2019 administrative hearing, Tr. 35, 245-246.

Plaintiff testified at the administrative hearing that she sometimes had difficulty remembering work processes, Tr. 44, and occasionally had supervisors try to get her to work faster, Tr. 45. She stated she gets distracted and loses focus, Tr. 49-50, and described fatigue, both physical and mental, that would require her to nap during the day. Tr. 48-49. She indicated her ability to pay attention and keep on task had gotten worse over time. Tr. 47-48.

Vaughn Blethen, Plaintiff's maternal grandmother and adoptive mother, additionally testified at the administrative hearing. Tr. 53-66. Ms. Blethen stated that Plaintiff had great difficulty managing a household and staying organized. Tr. 55, 57. She indicated Plaintiff was easily distracted and had memory issues that had gotten worse since 2017. Tr. 58-59. She testified that although she was pleased Plaintiff had been able to maintain the part-time job at Lowes, she was not

sure how Plaintiff managed to get work done because it seemed to be beyond her abilities. Tr. 61. Ms. Blethen also described Plaintiff's fatigue. Tr. 60. She stated that while Plaintiff lacked physical stamina, it was primarily Plaintiff's mental effort that caused Plaintiff to be fatigued. *Id*. Ms. Blethen testified that Plaintiff was mentally exhausted at the end of her four-hour work shifts. Tr. 60-61.

## STANDARD OF REVIEW

The ALJ is tasked with "determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, with deference to a reasonable interpretation of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence "is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1098; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

///

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 416.920(a); *Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the claimant bears the burden of establishing a prima facie case of disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once a claimant establishes that a physical or mental impairment prevents the claimant from engaging in past relevant work. 20 C.F.R. § 416.920(a)(4). If a claimant cannot perform past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show (1) that Plaintiff can perform other substantial gainful activity and (2) that a significant number of jobs exist in the national economy which Plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1497-1498 (9th Cir. 1984). If a claimant cannot make an adjustment to other work in the national economy, the claimant will be found disabled. 20 C.F.R. § 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On November 5, 2019, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since April 12, 2017, the alleged disability onset date. Tr. 17.

At step two, the ALJ determined Plaintiff had the following severe impairments: traumatic brain injury, neurocognitive disorder, and degenerative disc disease. Tr. 17.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. Tr. 18.

The ALJ assessed Plaintiff's Residual Functional Capacity (RFC) and found Plaintiff could perform light exertion level work with the following limitations: she must avoid concentrated exposure to hazards; she can perform simple, routine

1  work-related instructions, tasks, and decisions; there can be few changes in the
2  workplace and she will be not productive 10% of the workday; and she can have
3  occasional interaction with the public and coworkers. Tr. 19-20.

4       At step four, the ALJ found Plaintiff was not able to perform her past
5  relevant work as actually or generally performed. Tr. 24-25.

6       At step five, the ALJ determined that, based on the testimony of the
7  vocational expert, and considering Plaintiff's age, education, work experience, and
8  RFC, Plaintiff was capable of making a successful adjustment to
9  other work that exists in significant numbers in the national economy, including
10 the jobs of café attendant, routing clerk, and maid. Tr. 25-26.

11      The ALJ thus concluded Plaintiff was not under a disability within the
12 meaning of the Social Security Act at any time from April 12, 2017, the alleged
13 onset date, through the date of the ALJ's decision, November 5, 2019. Tr. 26.

14 **ISSUES**

15      The question presented is whether substantial evidence supports the ALJ's
16 decision denying benefits and, if so, whether that decision is based on proper legal
17 standards.

18      Plaintiff asserts the ALJ erred: (1) in his weighing of the opinions of the
19 medical sources about the impact of Plaintiff's impairments on her functioning;
20 (2) in his consideration of Plaintiff's subjective allegations; and (3) in his
21 consideration of the lay witness evidence. ECF No. 20 at 2.

22 **DISCUSSION**

23 **A.    Plaintiff's Subjective Complaints**

24      Plaintiff contends the ALJ erred by failing to provide specific, clear, and
25 convincing reasons for discounting her allegations of an inability to sustain full-
26 time employment. ECF No. 20 at 10-17. Defendant responds the ALJ reasonably
27 found Plaintiff's subjective complaints about her symptoms stood at odds with her
28 medical records and activity level. ECF No. 22 at 4-9.

It is the province of the ALJ to make credibility determinations. *Andrews*, 53 F.3d at 1039. However, the ALJ's findings must be supported by specific cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

The ALJ concluded Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely consistent with the medical and other evidence of record. Tr. 20.

The ALJ first held that Plaintiff's statements to treating providers were inconsistent with her allegations. Tr. 20-21.

In determining credibility, an ALJ may engage in ordinary techniques of credibility evaluation, such as considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005); *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). When a claimant fails to be a reliable historian, "this lack of candor carries over" to other portions of her testimony. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

The ALJ indicated that in February 2019 Plaintiff reported her low energy and fatigue while working was related to an increase in the physical demands of her work and/or that she had struggled to self-monitor her energy and nutrition. Tr. 20-21 *citing* Tr. 442, 447. The ALJ found this report suggested Plaintiff's fatigue was unrelated to her impairments and was thus inconsistent with her allegations. The undersigned does not agree.

Plaintiff's June 2017 Function Report indicates her "Traumatic Brain Injury affects planning, organization, spatial concepts, multi-tasking, fine/gross motor skills, balance, **energy/stamina**, memory, social skills, [and] concentration." Tr. 261 (emphasis added). The record reflects consistent reporting of Plaintiff experiencing physical and mental fatigue as a result of her condition. *See* Tr. 48-49 (Plaintiff's testimony that fatigue, both physical and mental, require her to take naps during the day); 60-61 (Ms. Blethen's testimony that Plaintiff was mentally exhausted at the end of her four-hour work shifts at Lowes); 335-336 (Dr. Goldberg noting psychological testing was completed over two days, secondary to fatigue); 433, 437 (speech-language pathology treatment reports noting Plaintiff was being treated to assist with independent management of energy/fatigue and indicating Plaintiff experienced cognitive fatigue during a session).

The ALJ's citation to a single speech-language pathology treatment report stating, "Patient indicated that due to increased physical demands at work she has been experiencing an increase in physical **and cognitive fatigue**," and that Plaintiff reported struggling to self-monitor her energy level, Tr. 442 (emphasis added), is entirely consistent with Plaintiff's allegation of limitations, both physical and mental, stemming from her impairments. The ALJ's finding to the contrary is thus not a specific, clear and convincing reason to reject her subjective complaints.

The ALJ next assessed that Plaintiff's allegations of "extremely limiting" physical and mental symptoms were not consistent with the objective medical evidence of record. Tr. 21.

A lack of supporting objective medical evidence is a factor which may be considered in evaluating an individual's credibility, provided it is not the sole factor. *Robbins v. Soc. Sec. Admin.*, 466 F3d 880, 883 (9th Cir. 2006).

First, Plaintiff has not alleged "extremely limiting" restrictions as claimed by the ALJ. Tr. 21. Plaintiff asserts that while she can perform some work and work-like activities, she is unable to sustain work activity on the regular and continuing

ORDER GRANTING PLAINTIFF'S MOTION . . . - 7

basis necessary to sustain employment in a competitive work environment.[2]  ECF No. 23 at 7-8.  Plaintiff has worked part-time, 15 to 20 hours a week, during the relevant time period in this case and alleges her fatigue and diminished focus with prolonged effort restrict her ability to work more than on a part-time basis.  *See Matz v. Sisters of Providence in Oregon,* 1999 WL 1201682 at *4 (D. Or. 1999) (noting the SSA's stance that the ability to perform part-time work does not preclude a finding of disability); *Barsotti v. Comm'r, Soc. Sec. Admin.,* 2000 WL 328024 at *3, n. 2 (D. Or. 2000); *Bladow v. Apfel,* 205 F.3d 356, 359-360 (8th Cir. 2000) (noting that the Commissioner interprets SSR 96-8p to require at step five the ability to work on a "regular and continuing basis"); *Kelley v. Apfel,* 185 F.3d 1211, 1214 (11th Cir. 1999) (describing the Commissioner's stance as "only an ability to do full-time work will prevent a finding of disabled at step five").

With respect to Plaintiff's physical condition, Plaintiff's disability claim centers on the impact her traumatic brain injury has had on her ability to maintain concentration, persistence, and pace and to remember and perform complex or detailed tasks.  ECF No. 20 at 13.  She has not asserted significant limitations related to physical impairments.  Consequently, the ALJ's report that physical examinations documented only normal and mild findings does not provide a specific, clear and convincing reason to reject her subjective complaints.

As to Plaintiff's mental health symptoms, the ALJ determined that inconsistent with Plaintiff's subjective complaints, psychologist testing and the observations of treating and examining medical providers supported a conclusion that Plaintiff could perform a range of simple work with limited social interactions.  Tr. 21.  The majority of the paragraph addressing the ALJ's determination in this

///

---

[2]Social Security Ruling 96-8p defines a "regular and continuing basis" as "8 hours a day for 5 days a week, or an equivalent work schedule."  SSR 96-8p.

ORDER GRANTING PLAINTIFF'S MOTION . . . - 8

regard pertains to psychological testing performed in 2011, six years prior to the alleged onset date, by Mary Pepping, Ph.D. (erroneously identified by the ALJ as Dr. Goldberg). Tr. 21, 307-318. Although evidence from outside of the relevant time period can be deemed useful as background information, it is irrelevant to the extent that it does not address Plaintiff's medical status during the relevant period at issue in the case. *See Fair v. Bowen*, 885 F.2d 597, 600 (9th Cir. 1989) (medical opinions predating the alleged onset of disability are relevant only to a claimant's burden of proving the condition has worsened).

      The ALJ also cites Dr. Goldberg's 2017 testing as contrasting with Plaintiff's subjective complaints. Tr. 21, 319-330. The ALJ indicated that Dr. Goldberg's 2017 report showed Plaintiff's performance was generally comparable to the 2011 test results, with some decline in free recall and verbal fluency, and that Dr. Goldberg's examination showed relatively stable cognitive functioning when compared to the 2011 evaluation. Tr. 21 *citing* Tr. 323-326. However, the ALJ failed to identify any specific allegations by Plaintiff that Dr. Goldberg's 2017 evaluation undermined. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (finding the SSA must "set forth the reasoning behind its decisions in a way that allows for meaningful review"); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) ("Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence."); *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("the ALJ must specifically identify the testimony she or he finds not to be credible and **must explain what evidence undermines the testimony**" (emphasis added)).

      In any event, Plaintiff has alleged difficulties with sustaining concentration, persistence, and pace; her ability to remember information and instructions; and the fatigue she experiences with prolonged effort. Plaintiff testified she sometimes had difficulty remembering work processes, occasionally had supervisors tell her

to work faster, gets distracted and loses focus, and struggled to pay attention and keep on task. Tr. 44-45, 48-50. Consistent with Plaintiff's account of limited functioning, Dr. Goldberg's report stated as follows:

> The cognitive difficulties evidenced in the current evaluation could be expected to interfere with her performance in demanding settings that require a high degree of sustained attention and performance accuracy, rapid mental multitasking, consistent learning and retention of novel complex information, efficient oral communication, and/or rapid development of well-organized and planned approaches to novel complex, multistep tasks. Her cognitive profile would suggest that she is best suited for settings in which she can perform a singe task at a time and minimize distractions around her, has a fair amount of control over the pace of her performance, is familiar with the tasks to be completed, and is able to use compensatory systems/strategies to assist with the consistency of her recall of information important to completion of a given task.
>
> . . .
>
> In regards to vocational and college readiness, her demonstrated cognitive difficulties in the current evaluation, especially in memory functioning and aspects of executive functioning, suggests that she would struggle in gainful employment settings as well as academic settings at the collegiate level. In terms of work, this does not necessarily mean that she is incapable of some form of gainful employment, at least on a parttime basis, but that her options would be limited and her chances of long-term success in a given fulltime job uncertain. Very careful vocational planning (e.g., match cognitive profile with demands of a given job) and ample on-the-job support would be needed to optimize her chances of long-term success. Even then, in my opinion, questions regarding her employment longevity would remain.

Tr. 327-328.

After a careful review of Dr. Goldberg's 2017 report, the Court is unable to detect any inconsistencies between the 2017 report and Plaintiff's allegations of limitations. Accordingly, the Court finds the ALJ's rationale regarding Plaintiff's

mental health symptoms, Tr. 21, does not provide a specific, clear and convincing reason to reject Plaintiff's subjective complaints.

The ALJ next stated that Plaintiff's activities were inconsistent with her allegations of extremely limiting symptoms. Tr. 21. The ALJ specifically found Plaintiff's allegations of functional limitations were inconsistent with her ability to work, graduate high school, obtain an AA degree, drive, and go out on her own. Tr. 21-22. It is well-established that the nature of daily activities may be considered when evaluating credibility. *Fair*, 885 F.2d at 603 ("[I]f a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that *are* transferable to a work setting, a specific finding as to this fact may be sufficient to discredit an allegation of disabling excess pain." (emphasis in original)).

Although an ALJ may rely on part-time work activity to discredit a claimant's subjective symptom testimony, *Drouin v. Sullivan*, 966 F.2d 1255, 1258 (9th Cir. 1992), here, the ALJ did not explain how Plaintiff's part-time work was inconsistent with her allegations of limitations. In addition, Plaintiff's ability to graduate high school and obtain an AA degree, both occurring prior to the alleged onset date, does not evince her level of functioning during the relevant time period in this case or demonstrate any specific inconsistencies with Plaintiff's testimony. It is notable that Plaintiff also reported attending special education classes while in high school, Tr. 246, 252, and did not take a full course load when attending community college, Tr. 321. As to Plaintiff's ability to drive and go out on her own, the Court finds the lack of evidence of record describing the performance of these activities by Plaintiff fails to reveal any inconsistencies with Plaintiff's allegations. *See Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("[T]he mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, **driving a car**, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." (emphasis added)).

ORDER GRANTING PLAINTIFF'S MOTION . . . - 11

1  Moreover, the Court finds it significant to note that one cannot assume from the
2  record that Plaintiff's driving written and skills test occurred after onset and
3  reissuance in the state of Washington only requires a vision test.
4      Substantial evidence does not support the ALJ's finding that Plaintiff's level
5  of activity in this case was inconsistent with her subjective complaints. *See Fair*,
6  885 F.2d at 603 ("The Social Security Act does not require that claimants be
7  utterly incapacitated to be eligible for benefits.").
8      Finally, the ALJ held that Plaintiff's improvement in memory following
9  treatment was inconsistent with her allegations of disabling mental health
10 symptoms. Tr. 22. An ALJ may rely on the effectiveness of treatment to find a
11 plaintiff's testimony unpersuasive. *See Morgan*, 169 F.3d at 599 (an ALJ may
12 properly rely on a report that a plaintiff's symptoms improved with the use of
13 medication); *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983) (finding
14 impairments controlled by treatment cannot be considered disabling).
15     The ALJ indicated Plaintiff's ability to recall information had improved
16 shortly after she started speech language pathology treatment, within three months
17 her ability to complete functional tasks and activities of daily living had improved,
18 and she had met two of three goals of the treatment by June 2019. Tr. 22 *citing* Tr.
19 441, 480, 522. However, upon the Court's review of the records cited by the ALJ,
20 it is apparent that, despite the evident benefit of individual treatment with the
21 speech language pathology service, Plaintiff continued to demonstrate cognitive-
22 communication deficits that continued to impact her daily functioning. *See* Tr. 442
23 ("[Plaintiff] indicated that these plans have been useful and contributed to a
24 positive increase in completion of functional tasks during the previous week, but
25 she has not experienced the same boost this week. . . . [Plaintiff] currently
26 demonstrates mild-moderate cognitive-communication deficits."), 480 ("[Plaintiff]
27 continues to demonstrate mild-moderate cognitive-communication deficits. Patient
28 completion of functional and ADL tasks has improved from baseline, but continues

to have an impact on her daily functioning."), 522 ("Management of these deficits and their impact on her daily life continues to improve.  However, these deficits continue to have an impact on her daily functioning.").

The evidence of record does not support the ALJ's conclusion that Plaintiff's symptom improvement with treatment contradicted her subjective complaints.

The ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  This Court has a limited role in determining whether the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for that of the ALJ even if it might justifiably have reached a different result upon *de novo* review.  42 U.S.C. § 405(g).  It is the role of the trier of fact, not this Court, to resolve conflicts in evidence.  *Richardson*, 402 U.S. at 400.  However, given that none of the reasons provided by the ALJ for discounting Plaintiff's subjective complaints are supported by substantial record evidence, the Court concludes that Plaintiff's subjective symptoms must be reassessed on remand.  On remand, the ALJ shall reconsider Plaintiff's statements and testimony and reassess what statements, if any, are not credible and, if deemed not credible, what specific evidence undermines those statements.

**B.     Lay Witness Statements**

Plaintiff additionally contends the ALJ failed to provide germane reasons for rejecting the lay witness statements of Ms. Blethen, Plaintiff's maternal grandmother and adoptive mother.  ECF No. 20 at 17-20.  Defendant argues the ALJ reasonably discounted the lay witness testimony because it was inconsistent with Plaintiff's activities and Dr. Goldberg's evaluation.  ECF No. 22 at 17-19.

An ALJ must consider the statement of lay witnesses in determining whether a claimant is disabled.  *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006).  "[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her

condition." *Dodrill*, 12 F.3d at 918-919. Such testimony cannot be disregarded without comment, and if a lay witness statement is rejected, the ALJ "must give reasons that are germane to each witness." *Dodrill*, 12 F.3d at 919.

Ms. Blethen completed a Function Report and indicated Plaintiff's traumatic brain injury affected Plaintiff's planning, organization, spatial concepts, multi-tasking, fine/gross motor skills, balance, energy/stamina, memory, social skills and concentration. Tr. 261. She reported Plaintiff needed reminders to complete her personal care and chores, was easily distracted or overwhelmed, had difficulty completing her chores, and needed clear instructions. Tr. 263, 267. Ms. Blethen also submitted a letter in September 2019 on behalf of Plaintiff which stated that Plaintiff required close supervision of tasks, order/routine, and a structured environment; could not independently respond to unique situations, such as picking up a mess when vacuuming; and would get distracted if not given clear instructions. Tr. 306. Finally, Ms. Blethen testified at the September 2019 administrative hearing that Plaintiff had difficulty managing a household and staying organized, was easily distracted, had memory issues, and suffered fatigue from mental exertion. Tr. 55-61.

The ALJ found Ms. Blethen's statements inconsistent with Plaintiff's activities; specifically, Plaintiff's ability to drive and go out on her own. Tr. 22. As discussed in Section A, above, the ALJ's inconsistency finding based on Plaintiff's ability to drive and go out on her own was not supported in light of the lack of evidence of record describing these activities by Plaintiff. Consequently, this is not a germane reason for rejecting the statements of Ms. Blethen.

The ALJ also found that Ms. Blethen exaggerated the evidence of record by stating that Plaintiff will "**probably** never be able to work full-time," Tr. 306 (emphasis added), when Dr. Goldberg opined only that Plaintiff's chances of long-term success in a given fulltime job were "uncertain," Tr. 328. Tr. 23. Dr. Goldberg's 2017 opinions regarding Plaintiff's functioning are recited in Section

A, above, and the Court finds it is not unreasonable for one to interpret this section of the report as suggesting that Plaintiff would probably not be able to perform full-time work. Accordingly, the Court finds that this was also not a germane reason for rejecting the lay witness statements of Ms. Blethen.

Defendant argues Plaintiff and Ms. Blethen offered similar testimony about Plaintiff's functional problems; therefore, the ALJ's reasons for discounting Plaintiff's subjective complains apply equally to Ms. Blethen's statements. ECF No. 22 at 19; *see Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (An ALJ may reject lay witness testimony that essentially reproduces the claimant's properly discredited testimony). However, the ALJ did not invoke this rationale in the context of evaluating Ms. Blethen's lay witness statements. *See* Tr. 22-23. The Court is constrained to review only the reasons provided by the ALJ and may not affirm on a ground upon which the ALJ did not rely. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Regardless, as concluded by the Court in Section A, above, the ALJ failed to provide specific, clear and convincing reasons for discounting Plaintiff's subjective complaints in this case.

The Court finds the ALJ's rejection of Ms. Blethen's lay witness statements is not supported. Therefore, on remand, the ALJ shall be required to reconsider Ms. Blethen's statements and testimony.

C. **Medical Opinion Evidence**

Plaintiff also contends the ALJ erred by failing to properly consider the medical opinion evidence of record. ECF No. 20 at 4-10. Plaintiff specifically argues the ALJ erred by (1) failing to include into the ultimate RFC assessment all of the limitations assessed by Myron Lee Goldberg, Ph.D., in 2017, Tr. 319-330; (2) rejecting Dr. Goldberg's November 2017 opinion on a representative supplied check-box form, Tr. 395-397; and (3) rejecting an October 2019 opinion of Amy Young, MA, CCC-SLP, Plaintiff's speech-language pathologist, on the same representative supplied check-box form, Tr. 539-542. Defendant responds that the

ALJ was reasonably persuaded by medical opinions that were supported and consistent with the record instead of opinions that were not. ECF No. 22 at 9-17.

As determined by the ALJ, Dr. Goldberg's 2017 report opined that Plaintiff would be best suited for work settings in which she could perform a single task at a time, with minimized distractions around her, with a fair amount of control over the pace of her performance, and with familiar tasks to be completed. Tr. 24. The ALJ found Dr. Goldberg's 2017 report was supported by and consistent with his testing, Tr. 24, and, as discussed in Section A, the report also appears entirely consistent with Plaintiff's allegations of functional limitations. Plaintiff thus asserts the ALJ erred because "each of the limitations assessed by Dr. Goldberg should have appeared in the residual functional capacity assessment." ECF No. 20 at 6. The Court does not agree.

"It is not necessary to agree with everything an expert witness says in order to hold that his testimony contains 'substantial evidence.'" *Magallanes*, 881 F.2d at 753 (quoting *Russell v. Bowen*, 856 F.2d 81, 83 (9th Cir. 1988)). An ALJ may properly rely upon only selected portions of a medical opinion while rejecting other parts, *Magallanes*, 881 F.2d at 753-754, but such reliance must be consistent with the medical record as a whole, *Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001) (finding the ALJ selectively focused on aspects of doctor's report which suggested non-disability, but failed to realize that, under the law, her conclusion required clear and convincing reasons). Nevertheless, because this case must be remanded for the reassessment of Plaintiff's subjective complaints and the lay witness statements of Ms. Blethen, the Court finds the ALJ shall also be directed to reevaluate Dr. Goldberg's 2017 report and readdress its supportability and consistency with other evidence in the record.

With respect to the representative-supplied "Mental Source Statement" forms completed by Dr. Goldberg in November 2017, Tr. 395-397, and Ms. Young in October 2019, Tr. 539-542, although the Court appreciates the basis for the ALJ

finding these check-box reports[3] unpersuasive, Tr. 24, since this case is already being remanded on other grounds, *see supra*, on remand the ALJ shall also be directed to reevaluate these reports and readdress their supportability and consistency.

## CONCLUSION

Plaintiff argues the ALJ's decision should be reversed and remanded for the payment of benefits or, alternatively, for additional proceedings to resolve the issues identified in her briefing. ECF No. 20 at 20. The Court has the discretion to remand the case for additional evidence and findings or to award benefits. *Smolen*, 80 F.3d at 1292. The Court may award benefits if the record is fully developed and further administrative proceedings would serve no useful purpose. *Id*. Remand is appropriate when additional administrative proceedings could remedy defects. *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989). In this case, the Court finds that further development is necessary for a proper determination to be made.

On remand, the ALJ shall reevaluate Plaintiff's statements and testimony and the lay witness statements and testimony of Vaughn Blethen. The ALJ shall additionally reconsider Dr. Goldberg's 2017 evaluation opinions, Dr. Goldberg's November 2017 opinion on a representative supplied check-box form, Ms. Young's October 2019 opinion on the same representative supplied check-box form, and all other medical evidence of record. The ALJ shall further develop the record by directing Plaintiff to undergo a consultative psychological examination and/or by eliciting the testimony of a medical expert at a new administrative hearing to assist the ALJ in formulating a new RFC determination. The ALJ shall

---

[3] An ALJ's rejection of a check-box report that does not contain an explanation of the bases for the conclusions made is permissible. *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996).

ORDER GRANTING PLAINTIFF'S MOTION . . . - 17

obtain supplemental testimony from a vocational expert, if necessary, and take into consideration any other evidence or testimony relevant to Plaintiff's disability claim. Accordingly, **IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 20**, is **GRANTED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 22**, is **DENIED**.

3. The matter is **REVERSED and REMANDED** to the Commissioner for additional proceedings consistent with this Order.

4. An application for attorney fees may be filed by separate motion.

**IT IS SO ORDERED**. The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Plaintiff and the file shall be **CLOSED**.

DATED November 1, 2022.



_____
ALEXANDER C. EKSTROM
UNITED STATES MAGISTRATE JUDGE